IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TOTLYN WRIGHT LEE,
JOYCE LEE,
TANISHA LEE,
CLIFTON LEE,
DEVON LEE,
Plaintiffs Estate of LUDWIC V. LEE,

        Plaintiffs,

v.                                                                CIV 06-0149 KBM/ACT

STATE OF NEW MEXICO INTERSTATE
AGREEMENT ON DETAINERS,
METROPOLITAN DETENTION CENTER
c/o COUNTY EXECUTIVE DEPARTMENT,
HENRY PEREA, Chief Executive for MDC
in his individual and official capacity,
MEDICAL ADMINISTRATIVE UNIT STAFF,
in individual and official capacities,
CORRECTIONAL OFFICERS, names unknown,
in individual and official capacities,
HARRY KEIFER, Reg. Dir. of Transcor Prisoner Co.,
in individual and official capacity, and
ALL OTHER PARTIES TO THIS ACTION,  KNOWN
AND UNKNOWN, in individual and official capacities,

        Defendants.

# **MEMORANDUM OPINION AND ORDER**

Totlyn Wright Lee brings this civil rights action *pro se* and *in forma pauperis* for damages resulting from the death of her husband who was in custody at the time the relevant events occurred. This matter is before the Court upon various defendants' motions to dismiss. *See Docs. 23, 27, 37.* Having reviewed the motions, memoranda and exhibits submitted by the parties

and the relevant authorities, I find that the case cannot proceed in the absence of the appointment of a suitable personal representative to bring this action.

## Allegations of the Complaint

The Complaint alleges that Ludwic V. Lee ("Lee") suffered from a heart condition and high blood pressure for which he took medications taken every day. Florida authorities arrested Lee on an outstanding New Mexico warrant and then extradited him to New Mexico by a prison transport company named "Transcor." The trip took nine days, during which time Lee was not given any medication.

When he arrived in New Mexico on July 29, 2004, Lee complained that he had not received his medications and submitted urgent requests for medical attention because of his deteriorating health. As of August 5, 2004, Lee still had not received medication, and Bernalillo County Metropolitan Detention Center ("BCMDC") employees told his criminal attorney that it would "check into" the matter. Three days later, Lee's condition worsened, but he received no medical attention. The next day, he was found dead in his cell. *See Doc. 1* at 3-5, attachments.

## The Parties

### *The Plaintiffs*

The decedent's widow, Plaintiff Totlyn Wright Lee filed this action in February of this year. She seeks to act on her own behalf and on behalf of decedent's mother (Joyce Lee), Decedent's "four children and seven grandchildren" and the decedent's estate. *Doc. 1* at 2; *see also Doc. 34* at 1 (characterizing Plaintiffs as "survivors" of the decedent). Only three of the four children are identified in the Complaint's caption as named plaintiffs (Tanisha, Clifton, and Devon), and no indication is given as to whether they are minors or adults. *Id.* at 1.

In this matter, Plaintiff Totlyn Lee and all named defendants have consented to me serving as the presiding judge. *See Doc. 5.*[1] However, no other named plaintiff has submitted such a consent. In fact, ***nothing*** in the record indicates that any of the other named plaintiffs are even aware of the filing of this action. These observations raise significant concerns in assessing Totlyn Lee's ability to maintain this action.

Mrs. Lee acknowledges that she has no training in the law and that she is not a licensed attorney. Therefore, she cannot represent anyone else's interests except her own. *See Rowland v. Men's Colony*, 506 U.S. 194, 202 (1993) (only licensed attorney may represent artificial entities). "A nonlawyer, such as these purported 'trustee(s) pro se' has no right to represent another entity, i.e., a trust, in a court of the United States." *Knoefler v. United Bank of Bismark*, 20 F.3d 347, 348 (8th Cir. 1994), citing *C.E. Pope Equity Trust v. U.S.*, 818 F.2d 696, 697-98 (9th Cir.1987).

In motions seeking appointment of counsel, Mrs. Lee indicates that a significant language barrier has thwarted her attempts to obtain her G.E.D. She alleges that she lacks funds to hire an investigator or attorney. Requests for appointment of counsel and discovery thus far have been denied by Magistrate Judge Alan C. Torgerson. *See, e.g., Docs. 15, 24 & 40.*

Mrs. Lee has been incarcerated in Florida under another name (Rose Anne Sands) since 2002, and her projected release date is June 2008. *See, e.g., Doc. 34* & attachments; *Doc. 20* at 2; *Doc. 1* (and attachments); www.bop.gov ("inmate locator" search results identification number 38000-004). Ms. Lee indicates that she is receiving assistance from a "jailhouse lawyer," *see*

---

[1] *See also Doc. 18* (by attorney Sean Olivas, who listed the client as "CYFD," but who is representing the "State of New Mexico Interstate Agreement on Detainers" see Docs. 23, 43); *Doc. 14* (attorney for Defendants Transcor America, LLC and Keifer); *Doc. 9* (attorney for Defendants Metropolitan Detention Center and Perea).

*Doc. 20* at 2-3, and indeed, the Plaintiffs' pleadings seem well-researched and briefed. The person assisting Ms. Lee appears quite familiar in the areas of federal procedure as well as constitutional and civil rights law. Clearly, though, an incarcerated individual could encounter great difficulty in proceeding through discovery and litigation.

### *The Defendants*

Mrs. Lee now concedes that Eleventh Amendment immunity bars this Court from entertaining any claims for monetary damages against the State of New Mexico and admits that she intended to sue the State when she named the "State of New Mexico Interstate Agreement on Detainers (Department)" as a Defendant. *See Doc. 41* at 3-4. Therefore, the motion to dismiss filed by the State *(Doc. 23)* will be granted.

The Metropolitan Detention Center correctly contends that it is a "nonsuable" entity as "an administrative department that is operated by the City of Albuquerque, a municipal corporation." *Doc. 27* at 4. Although an administrative department of a municipality cannot be sued, the municipal corporation can, and in this case ***has*** been sued. The claim against Defendant Perea in his official capacity is, in essence, a claim against the City of Albuquerque. *See Henry v. Albuquerque Police Dept.,* 49 Fed. Appx. 272 (10th Cir. 2002).[2] Moreover, because the Metropolitan Detention Center "lacks a legal identity apart from the City of Albuquerque," the City, already here represented by counsel, will be substituted as the appropriate defendant, and no further service is required.

---

[2] "We note that Ms. Henry did not sue any municipal entity *per se.* She did, however, sue Officer Hansen in his official capacity, which is equivalent to suing the City of Albuquerque, his true employer." *Henry*, 49 Fed. Appx. at 274, n.1.

## The Standard to be Applied

Because no licensed attorney has entered an appearance on behalf of any plaintiff, I am obligated to construe the Complaint liberally on a motion to dismiss. *See e.g., Haines v. Kerner,* 404 U.S. 519, 520- 21 (1972) (*per curiam*); *Hall v. Bellmon,* 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991). Moreover, I have done so in light of all of Plaintiffs' other pleadings on file. The factual allegations of the Complaint are assumed to be true.[3] A motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

## The Claims

The Complaint is specifically entitled "Wrongful Death Claim Under 42 U.S.C. § 1983," and it describes defendants' alleged failure to provide proper medical care in violation of decedent's "Eighth and Fourteenth Amendment . . . rights resulting in death." [4] *Doc. 1* at 2. Later pleadings could also be read to assert only a federal claim under § 1983.[5] However, after liberally construing the *pro se* Complaint, I conclude that Plaintiffs also seek to bring a state tort

---

[3] Defendants argue that the submitted Jamaican marriage certificate is insufficient to demonstrate that Totlyn Lee is the lawful widow. Yet at this stage, my function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991).

[4] It should be noted, however, that the source of constitutional protection afforded to pretrial detainees lies in the Due Process Clauses of the Fifth and Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979) (Eighth Amendment protections apply ***after*** the state has "secured an adjudication of guilt").

[5] *See Doc. 42* at 1 ("on February 23, 2006, plaintiffs filed a 42 U.S.C. 1983 action in this court, against numerous defendants"); *id.* at 8 ("Plaintiff claim is cognizable under 42 U.S.C. 1983 wrongful death action, and Eight and Fourteenth (sic) Amendment Violation"); *Doc. 41* at 1 ("On February 23, 2006, plaintiffs filed a wrongful death action under 42 U.S.C. 1983"); *Doc. 33* at 1 ("On February 23, 2006, the Lees . . . filed a 42 U.S.C. 1983 action against numerous defendants").

claim on behalf of the survivors pursuant to New Mexico's Wrongful Death Act based upon the types of damages sought. *See* N.M. Stat. Ann. § 41-41-2-3. Ultimately, I find that because no appropriate personal representative has been appointed as to either claim, this action cannot proceed.

### *The Section 1983 Cause of Action*

In *Berry v. City of Muskogee*, the Tenth Circuit engaged in a thorough analysis of a Section 1983 claim for damages when an inmate's death results from a violation of constitutional rights while in custody.

> [W]hen the constitutional violation has resulted in death, § 1983 does not specify whether the cause of action it creates survives the death, who are the injured parties, the nature of the claims that may be pursued or who may pursue them, or the types of damages recoverable. We are not left totally without guidance, however, in that 42 U.S.C. § 1988 authorizes federal courts to undertake a three-step process to determine whether to borrow law from another source to aid their enforcement of federal civil rights statutes. . . . Section 1988 first directs that courts look to federal law "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." 42 U.S.C. § 1988. Second, if federal law is "not adapted to the object" or is "deficient in the provisions necessary to furnish suitable remedies and punish offenses," courts must consider borrowing the law of the forum state. Third, the federal court must reject the application of state law if it is "inconsistent with the Constitution and laws of the United States."

*Berry*, 900 F.2d 1489, 1502 (10th Cir. 1990) (citations omitted). The *Berry* court cautioned, however, that "§ 1988 alone does not 'authorize the federal courts to borrow entire causes of action from state law.'" *Id.* at 1503, quoting *Moor v. County of Alameda*, 411 U.S. 693 (1973).

Oklahoma's survival action was found to be inconsistent with the broad remedial purposes of § 1983 as it provided "extraordinarily limited recovery." *Id.* at 1504. The *Berry* court

6

therefore considered supplementing the survival action with the remedies available under Oklahoma's wrongful death statute. The Tenth Circuit was troubled by

> plac[ing] into the hands of the state the decision as to allocation of the recovery on a § 1983 case. . . . Allowing the state determinations to prevail also permits the state to define the scope and extent of recovery. For instance, some states may preclude, or limit, recovery for pain and suffering or for punitive damages. In addition, some state laws may deny all recovery in particular circumstances, as when wrongful death actions must be for dependents and there are none.

*Id.* at 1506. The *Berry* court therefore determined that "supplementing a state survival action with a state wrongful death action does not satisfy the criteria of § 1988 for borrowing state law." [6]

So instead of borrowing a state's law to define available damages, the Tenth Circuit established a uniform rule to govern damages recoverable under § 1983 when a death results from the violation of constitutional rights.

> [T]he federal courts must fashion a federal remedy to be applied to § 1983 death cases. The remedy should be a survival action, ***brought by the <u>estate</u> of the deceased victim***, in accord with § 1983's express statement that the liability is "to the party injured." 42 U.S.C. § 1983. It must make available to plaintiffs sufficient damages to serve the deterrent function central to the purpose of § 1983. In accord with *Smith* [*v. Wade*, 461 U.S. 30 (1983)], punitive damages may be recovered in appropriate cases. As for compensatory damages . . . when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined accordingly to principles derived from the common law of torts.". . . We believe appropriate compensatory damages would include medical and burial expenses, pain and

---

[6] *But see Frontier Ins. Co. v. Blaty*, 454 F.3d 590 (6th Cir. 2006) ("We disagree with this portion of the Tenth Circuit's reasoning to the extent it stands for the proposition that variance in state law remedies may make all state remedies in that area inadequate under section 1988. Section 1988(a) is clear.").

7

>suffering before death, loss of earnings based upon the probable
>duration of the victim's life had not the injury occurred, the victim's
>loss of consortium, and other damages recognized in common law
>tort actions.

*Id.* at 1506-07, quoting *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (emphasis added). In other words, the Section 1983 damages are intended to compensate the person whose constitutional rights were violated for ***his*** losses, and if death results from such violation, that right of action belongs the ***estate*** of the deceased.[7]

### *State Claims*

The Complaint also seeks damages for the family's personal losses – "the family's pain and suffering, loss of companionship and protection, and loss of a father and grandfather." *Doc. 1* at 2. As seen above, such damages lie not in a Section 1983 action, but might be available in tort law as defined by the state. *See e.g. Romero v. Byers*, 117 N.M. 422, 429 (1994) (loss of guidance and counseling by a minor child is a pecuniary injury compensable under Wrongful Death Act); *Haceesa v. U.S.*, 309 F.3d 722, 734 (10th Cir. 2002) ("loss of consortium damages may not be awarded in [a wrongful death action] to the spouse of the decedent. Instead, the spouse of the decedent must bring a separate cause of action in his or her individual capacity to recover such damages.") (citation omitted).

Taking all of this into consideration, I liberally construe the Complaint to raise not only a Section 1983 claim resulting in death but also a state tort claim brought pursuant to New Mexico's Wrongful Death Statute. As the *Berry* court observed: "The state wrongful death

---

[7] Ludwic Lee's family members raise no claim for violation of their own personal liberty. A personal relationship to the decedent alone is not sufficient to assert a "constitutional right personal to the plaintiff [i.e., familial association]." *Murphy v. Bitsoih,* 320 F. Supp. 2d 1174, 1184-85 (D.N.M. 2004) (Vázquez, Chief Judge); *see also Hill v. Martinez,* 87 F. Supp. 2d 1115, 1119 (D. Colo. 2000).

8

actions are not foreclosed by this approach [of establishing a uniform rule for damages available under § 1983]; they remain as pendent state claims. But, of course, there can be no duplication of recovery." *Berry*, 900 F.2d at 1506-07. I must therefore address the issues of standing and capacity to sue for the federal and state causes of action.

### Capacity to Sue

Totlyn Lee lacks the "capacity to sue" as to the Section 1983 claim if it is based simply on her status as a possible beneficiary of her late husband's estate. *See* FED. R. CIV. P. 17 ("Every action shall be prosecuted in the name of the real party in interest."). The federal § 1983 claim belongs to the decedent's estate, and only a state-authorized administrator or personal representative for the estate of Ludwic V. Lee can bring this § 1983 action. In New Mexico, the Uniform Probate Code set forth in Chapter 45 of its statutes determines such authority.

The present record is devoid of an assertion that any of the named Plaintiffs has been so authorized under New Mexico law, or that any proceedings are pending in a state court seeking appointment of a personal representative for the estate. Arguably New Mexico's choice of law could dictate that the estate's representative be determined by deceased's state of domicile.[8] It appears that Totlyn Lee, as a convicted felon, would be disqualified from serving as the estate's personal representative under Florida law. *See F.S.A.* §§ 733.302 to 733.303.

The "capacity to sue" issue is less clear when it comes to the state wrongful death claim, however. A lawsuit brought pursuant to the New Mexico Wrongful Death Act "has no relation to the estate." *In re Estate of Sumler,* 133 N.M. 319, 322 (Ct. App. 2002). So although New

---

[8] "A personal representative appointed by a court of the decedent's domicile has priority over all other persons except where the decedent's will nominates different persons to be personal representatives in New Mexico and in the state of domicile." N.M. Stat. Ann. § 45-3-203G.

Mexico's wrongful death statute provides that only a "personal representative" can bring suit, that personal representative need not be the individual or entity serving in that capacity under the Probate Code. *Id.*; *see also* N.M. STAT. ANN. § 41-2-3.

> The suit, under this act, clearly, has no relation to the estate. It is incidental that a "personal representative" (usually defined to be an executor or administrator, in one of the classes) is named to bring suit. It is not because this would fall within his duties as such, but because someone must be named and our Legislature has fixed upon such a person as the one to sue.

*Henkel v. Hood*, 49 N.M. 45, 47, 156 P.2d 790, 791 (1945) (citation omitted). "While the administrator [of the decedent's estate] may be the [wrongful death action] personal representative, there may be a personal representative who is not the administrator." *Stang v. Hertz Corp.*, 81 N.M. 69, 77 (Ct. App. 1969).

As a possible statutory beneficiary, Totlyn Lee obviously has standing to request appointment of a personal representative for a claim brought pursuant to Section 41-2-3. Reading her *pro se* pleadings liberally, I believe she seeks such appointment here so that she has the "capacity to sue" under Rule 17 of the Federal Rules of Civil Procedure. At least two judges of this district have determined that the federal court has authority to appoint the personal representative in a wrongful death action. *See Martinez v. McFarland,* CIV 05-936 RB/KBM at Doc. 24 (January 19, 2004); *Dawson v. El Paso Natural Gas Co.*, CIV 00-1575 LCS-ACE at Doc. 40 (October 3, 2002).

As Defendants accurately observe, "a personal representative for purposes of a wrongful death claim . . . must be appointed as such by a Court after bringing all necessary parties before the Court . . . ." *Doc. 37* at 3. Inasmuch as the wrongful death personal representative serves as

trustee for statutory beneficiaries,[9] and the possible beneficiaries must be given notice and an opportunity to participate in the action, including the appointment of the personal representative. *See* N.M. Stat. Ann. § 41-2-3.  In fact, a beneficiary may recover damages from a personal representative if the personal representative fails to fulfill her statutory obligations.  *See Dominguez v. Rogers*, 100 N.M. 605, 609 (1983).  Given her status as a convicted felon, logistical difficulties inherent with her current incarceration and her financial situation, appointment of Totlyn Lee as the wrongful death personal representative is problematic.

In the absence of a plaintiff represented by counsel with the capacity to sue on behalf of the estate, the Section 1983 claim is subject to dismissal pursuant to Rule 17.  Similarly the wrongful death claim cannot be prosecuted without authorization of a suitable personal representative.  However, "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party of interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in

---

[9] The relevant part of N.M. Stat. Ann. § 41-2-2 provides:

> Every action mentioned in Section 41-2-1 NMSA 1978 shall be brought by and in the name of the personal representative of the deceased person, and the jury in every such action may give such damages, compensatory and exemplary, as they deem fair and just, taking into consideration the pecuniary injury resulting from the death to the surviving party entitled to the judgment, or any interest in the judgment, recovered in such action and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default.  The proceeds of any judgment obtained in any such action shall not be liable for any debt of the deceased; provided the decedent has left a spouse, child, father, mother, brother, sister or child or children of the deceased child, as defined in the New Mexico Probate Code, but shall be distributed as follows:
> A. if there is a surviving spouse and no child, then to the spouse;
> B. if there is a surviving spouse and a child or grandchild, then one-half to the surviving spouse and the remaining one-half to the children and grandchildren, the grandchildren taking by right of representation . . . .

interest . . . ."  *See* FED. R. CIV. P. 17.

Moreover, under New Mexico state law, lack of capacity at the time of filing does not warrant dismissal, particularly if doing so could cause the statute of limitations to lapse.  *See Chavez v. Regents of The Univ. of N.M.,* 103 N.M. 606, 610-12 (1985); *Macias v. Jaramillo,* 129 N.M. 578, 581-82 (Ct. App. 2000).  Here, Totlyn Lee expressly avows that she filed before she found an attorney, because she knew the statute would expire in 2007, before her 2008 release date.  *See Doc. 20 at 2.*

Analysis of the current state of this litigation – the parties, the claims and potential defenses, both procedural and substantive – takes me back to my law school days filled with complicated fact patterns and the incalculable ways of approaching a strategy for resolution of a dispute.  As a judge, however, I am guided by our Federal Rules of Civil Procedure that promote the "just, speedy, and inexpensive determination of every action."  FED. R. CIV. P. 1.  Given the serious allegations raised and the value our society places on securing the constitutional rights of its citizens, the Court will attempt to fashion a fair and expeditious process to ascertain if and how this litigation should continue.

Again, only a licensed attorney can represent Ludwic Lee's estate.  In light of the present posture of the case, it is appropriate to ascertain if counsel is available to represent Plaintiff.  *See, e.g., Rucks v. Boergermann,* 57 F.3d 978, 979 (10th Cir. 1995); *Williams v. Meese,* 926 F.2d 994, 996 (10th Cir. 1991).  Therefore, I will refer this matter to the *Pro Se* Civil Rights Selection Committee for review and possible appointment of counsel under the district's *Pro Bono* Plan.  If an attorney agrees to take on the case, 42 U.S.C. § 1988 provides for the recovery of attorney fees if successful.  I will not approve attorney fees to be paid from the Bench and Bar Fund.  *See*

*Amended Administrative Order of August 9, 2005*, Misc. No. 91-09 at 7-8.

In order to assess the merits of the claims, an attorney will need sufficient information to determine the facts of the case and cannot simply rely on the allegations of the Complaint.  I consider the best course of action to order a *Martinez* Report.  Under *Martinez v. Aaron,* 570 F.2d 317, 320 (10th Cir. 1978), defendants may be ordered to investigate the incidents underlying a plaintiff's lawsuit and submit a report of their investigation in order to develop a factual or a legal basis for determining whether a prisoner plaintiff has a meritorious claim.  A *Martinez* Report may be used in a variety of contexts, including summary judgment.  *See, e.g., Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991); *Gee v. Estes,* 829 F.2d 1005, 1007 (10th Cir. 1987).

Wherefore,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. Defendant State of New Mexico's motion to dismiss on Eleventh Amendment immunity grounds *(Doc. 23)* is **granted**.  The "State of New Mexico Interstate Agreement On Detainers" is hereby **dismissed** as a defendant;

2. The motion to dismiss the Metropolitan Detention Center as a "nonsuable" entity *(Doc. 27)* is **granted in part**.  The Clerk shall substitute as defendant the "City of Albuquerque" for the "Metropolitan Detention Center," and no service need be made;

3. The Clerk shall substitute the correct name of "TransCor America, LLC" for "Transcor Prisoner Company;"

4. In all other respects, the motions to dismiss *(Docs 27, 37)* are **denied** at this juncture, but may be renewed if, within ninety days, no appropriate representative plaintiffs are substituted in this action and there are no pending proceedings to name a representative for the estate;

5. Defendants shall each prepare a separate *Martinez* Report addressing the allegations and claims raised in the Complaint and motions to amend by:

   (a) setting forth the facts needed to resolve the claims, *e.g.*, names of corrections officials and other inmates who directly dealt with Ludwic V. Lee during the alleged incidents or witnessed the alleged incidents; whether records exist pertaining to the events; whether prison policies or regulations address the situation;

   (b) providing copies of those records and documents that do exist, including but not limited to: incident reports; inmate misconduct reports; grievances by Ludwic V. Lee and decisions made by corrections officials in response; information relied upon by the officials in reaching their response; and copies of any prison policies or regulations that address the situation;

   (c) providing a copy of Ludwic V. Lee's medical records from the time of transfer from Florida authorities; and

   (d) providing affidavits in support of the report, if necessary;

6. The documents submitted with the *Martinez* Report may be submitted simultaneously, but the submission of documents and/or an index alone shall not be considered in compliance with this order. The Court is aware of the potential sensitivity of the materials contained in corrections files and that there may be valid reasons for keeping secret much of the content of a corrections file. As such, Defendants may redact confidential portions of documents submitted with the *Martinez* Report and also submit a memorandum setting forth any objections they may have to Plaintiffs being permitted to review any portion of the *Martinez* Report and its attachments. If Defendants do not submit such materials with the *Martinez* Report, the entire contents will be reviewable;

7. Defendants shall submit their *Martinez* Reports by Wednesday, November 15, 2006; and,

8. Upon submission of the Martinez Report, this matter is referred to the *Pro Se* Civil Rights Selection Committee for review and possible appointment of counsel under the Court's *Pro Bono* Plan.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.